In re Gerald N. SCIARRA, Debtor.

**FIRST BANK OF WEST HARTFORD, Movant,**

v.

**Gerald N. SCIARRA, Anthony Sciarra, Respondents.**

**Bankruptcy No. 2–93–02285.**

United States Bankruptcy Court, D. Connecticut.

Nov. 28, 1994.

Richard E. Greenspan, Hartford, CT, for debtor-respondent Gerald N. Sciarra.

David B. Beizer, Beizer and Weintraub, West Hartford, CT, for movant First Bank of West Hartford.

Douglas M. Evans, Schatz & Schatz, Ribicoff & Kotkin, Hartford, CT, for respondent, Anthony Sciarra.

### MEMORANDUM OF DECISION ON MOTION FOR RELIEF FROM STAY

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

### *ISSUE*

The principal issue presented in this relief from stay proceeding is what interest the debtor's estate has in a joint bank account established by the debtor's brother which, without the knowledge of the debtor, listed the debtor as a joint owner with the brother.

### II.

### *BACKGROUND*

Anthony Sciarra (Anthony), the brother of Gerald N. Sciarra, a Chapter 11 debtor (debtor),[1] on April 1, 1992 went to an office of the First Bank of West Hartford (First Bank) carrying a check made out to himself in the amount of $20,359, representing his savings on deposit at his federal credit union. Anthony advised a bank officer that he wished, in effect, to acquire for himself a certificate account (account) paying a higher interest rate, with the account proceeds to go to the debtor in the event of his death. The bank officer accepted Anthony's check, issued to him a document entitled "Certificate Account," which certified that First Bank acknowledged a deposit of $20,359 for the

term of 182 days, yielding 4.34 percent interest per annum and payable to "Anthony Sciarra or Gerald N. Sciarra" upon presentation and surrender of the "Certificate." The bank officer also furnished Anthony with a card entitled "Signature Card—Personal" which included Anthony's social security number, his address, and Anthony's and the debtor's names. Anthony alone signed this card and returned it to the bank officer.

Anthony testified that he never told the debtor he had opened the account, and that he did not intend that the debtor have any right to make a withdrawal from the account prior to Anthony's death. Anthony renewed the account as it matured, with a subsequent renewal made on March 31, 1993 to mature on September 29, 1993.

The debtor filed a Chapter 11 petition on June 8, 1993. He had become indebted to First Bank on May 21, 1991, when he executed a promissory note for $100,000. The present proceeding arose on or about April 13, 1994, when First Bank filed its motion requesting that the automatic stay imposed by Code § 362(a) be modified so that First Bank could offset the defaulted promissory note against the debt due the debtor based on the account.

First Bank, at the hearing, introduced a document into evidence entitled "Deposit Account Contract" (Contract), which a bank employee testified is normally given to all depositors. The Contract provides, *inter alia*, that "[i]f the account is a joint account it will be joint with the right of survivorship," that "[e]ach of you agrees that all amounts deposited by any of you ... can be paid to any one or more of you while you are alive," and that "[i]f this is a joint account [First Bank has a right of setoff which] applies to deposits of any of you to pay the debts owed by one, any or all of you." Anthony testified he never received the Contract.

First Bank contends that the debtor's interest in the account is property of the debtor's estate based on application of Conn.Gen.

---

1. The court has confirmed the debtor's plan of reorganization.

**4**

Stat. § 36–3[2] and that First Bank has a right of setoff under the terms of the Contract. Anthony asserts that the debtor's estate has no interest in the account because § 36–3 is inapplicable to the present dispute and First Bank has not established a valid inter vivos gift to the debtor.

### III.

### DISCUSSION

█ First Bank's attempt to invoke Conn. Gen.Stat. § 36–3 to establish the debtor's ownership interest in the account is unavailing. As explained in *Grodzicki v. Grodzicki*, 154 Conn. 456, 226 A.2d 656 (1967):

> The language of the statute does not determine the respective rights of the parties inter vivos. The presumption created by the second sentence of subsection (1) of the statute has no application to an action between the parties when all of them are alive. In such a case, we must look to our common law for a determination of the question presented.

*Id.* at 463; 226 A.2d at 659. *See also Devitt v. Manulik*, 176 Conn. 657, 662, 410 A.2d 465, 468 (1979) ("Although the survivorship question is settled [by Conn.Gen.Stat. § 36–3] ... the question of the donee's inter vivos interests is not answered, and the courts must once again look to their common law.") (internal quotations omitted). Section 36–3 does not determine the question of whether the account is property of the debtor's estate.

Anthony argues that "the only way Gerald Sciarra would have an interest in the account is if Anthony Sciarra made a gift of the sums in the account to Gerald Sciarra." Memorandum of Law in Opposition to Motion for

Relief From Stay, at 8. Anthony's argument is founded on *Grodzicki's* rejection of § 36–3 as the basis for determining property rights in a joint account, and the recommendation therein to look instead to the common law.

█ Under Connecticut common law, the burden of proving a valid inter vivos gift is on the party claiming the gift. *Bergen v. Bergen*, 177 Conn. 53, 56, 411 A.2d 22, 24 (1979). The burden requires "not only a delivery of possession of the property but also an intent on the part of the donor that title shall pass immediately to constitute a valid gift inter vivos of personal property." *Id.* at 56–57, 411 A.2d at 24. Absent proof of donative intent, a putative inter vivos gift will not be sustained. *Devitt*, 176 Conn. at 663, 410 A.2d at 468. "[T]he issue of intent is a question of fact...." *Bergen*, 177 Conn. at 57, 411 A.2d at 24.

█ The proofs here establish that Anthony did not intend that the debtor have any interest in the account during Anthony's lifetime. Anthony's testimony, which the court credits, is that he intended to retain exclusive control over the account until his death, he never notified the debtor of the existence of the account, and that he alone paid taxes on the interest earned. The bank officer determined on his own to place Anthony's funds in a joint account to carry out Anthony's intention. These factors support a finding that no present gift was intended. "Although the mere creation of the joint account provided some evidence of an intent to make a gift, it is by no means conclusive." *Devitt*, 176 Conn. at 663, 410 A.2d at 468. There are also Connecticut rulings to the effect that where no inter vivos gift is established in a joint account, garnisheeing credi-

2. Conn.Gen.Stat. § 36–3 provides, in relevant part, that a bank deposit or account

> in the names of two or more persons and in the form to be paid to any one or the survivor, or survivors, of them, such deposit or account and any additions thereto made by any of such persons after the making or issuance thereof ... shall be held for the exclusive use of such persons and may be paid to any of them during the lifetime of all of them or to the survivor or survivors after the death of one or more of them, and such payment and the receipt or acquittance of the person or persons to whom such payment is made shall be a valid and

> sufficient release and discharge for all payments so made. The making of a deposit or issuance of an account in such form shall, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, be prima facie evidence, in any action or proceeding respecting the ownership of, or the enforcement of the obligation created or represented by, such deposit or account, of the intention of all of the named owners thereof to vest title to such deposit or account, including all additions and increments thereto, in such survivor or survivors.

tors of the noncontributing joint-account holder take nothing. *See, e.g., Somers v. Snihur,* 1991 WL 25663, at *3 (Conn.Super. Feb. 5, 1991) (garnishment of joint bank account may reach only interest equitably owned by the debtor).

## IV.

### *CONCLUSION*

■ The future interest that Anthony intended to create for the debtor in the account may be described as a contingent equitable interest in remainder. *See In re Crandall,* 173 B.R. 836 (Bankr.D.Conn.1994). No party has addressed this aspect, and for the purposes of this ruling, it is unnecessary to undertake further analysis. First Bank's brief requests the court to find that the account is an asset of the debtor's estate, in the sense that the debtor had at the time of the filing of his petition a *present* right to the account proceeds. The court concludes that the debtor's estate has no present right such that First Bank may exercise a right of setoff. Accordingly, pursuant to the basis on which this matter has been submitted to the court, First Bank's motion for relief from stay must be, and hereby is, denied. It is

SO ORDERED.